```
                IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ROQUE GUTIERRES ALMAZAN,            :    CIVIL ACTION
                                    :    NO. 13-151
          Petitioner,               :
                                    :
     v.                             :
                                    :
COMMONWEALTH OF PENNSYLVANIA,       :
et al.,                             :
                                    :
          Respondents.              :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              January 20, 2015

      Roque Gutierres Almazan ("Petitioner") is a prisoner at State Correctional Institution — Benner in Bellefonte, Pennsylvania. Petitioner filed a pro se application seeking relief through a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Habeas Petition"). Magistrate Judge Lynne A. Sitarski ("Judge Sitarski") recommended denial of the Habeas Petition without an evidentiary hearing and with no certificate of appealability. Petitioner now objects. For the reasons that follow, the Court will deny Petitioner's Habeas Petition.

I.  **BACKGROUND**

The Pennsylvania Superior Court has offered the following summary of the facts:

> On Christmas Eve of 2005, at approximately 10:00 p.m., Gutierrez-Almazan and another man, Vincente Carillo, went to Concepcion Arias Tellez's apartment. (Tellez was Gutierrez-Almazan's estranged common law wife.) Gutierrez-Almazan then forcibly removed Tellez from her apartment. A neighbor heard a woman screaming and looked out her window and saw Gutierrez-Almazan and Carillo frog-marching Tellez to a van where yet another man, Juan Carillo, was waiting in the driver's seat. The neighbor immediately called the police.
>
> The trio then drove Tellez to an apartment building where she was taken into an apartment. Gutierrez-Almazan then struck and raped Tellez. The police eventually entered the apartment and found Gutierrez-Almazan completely nude and observed Tellez also nude and in a fetal position; she was sobbing uncontrollably and had bruises on her neck, face, lower back, and legs. Tellez told the police that Gutierrez-Almazan raped her. The police arrested Gutierrez-Almazan and took Tellez to a local hospital where a nurse completed a rape kit and recovered a white substance inside Tellez's vagina. The substance never underwent DNA testing.

Commonwealth v. Gutierrez-Almazan, No. 319 EDA 2007, slip op. at 26-27 (Pa. Super. Ct. Feb. 23, 2009), ECF No. 5-2.

Petitioner was charged with rape, kidnapping, simple assault, criminal conspiracy, and related offenses. On June 29, 2006, following a jury trial in the Bucks County Court of Common Pleas, Petitioner was found guilty of rape, kidnapping, unlawful restraint, and simple assault. On September 26, 2006, the trial court sentenced Petitioner to five to ten years' imprisonment. Report & Recommendation ("R&R") 2.

2

Petitioner filed a counseled post-sentence motion, asserting the following grounds for relief: (1) counsel was ineffective for failing to call relevant witnesses and to request DNA testing; (2) there was insufficient evidence in support of the guilty verdict; and (3) the verdict was against the weight of the evidence. R&R 2-3. The motion was denied.

On direct appeal, Petitioner raised one issue: whether trial counsel was ineffective in failing to request testing of the DNA evidence. The Pennsylvania Superior Court affirmed Petitioner's sentence on February 23, 2009, and denied allocatur review on August 5, 2009. R&R 3.

On March 22, 2010, Petitioner filed a pro se petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"). PCRA counsel was appointed. A PCRA evidentiary hearing was held on December 10, 2010, and Petitioner clarified that he was seeking relief on the following grounds: (1) trial counsel was ineffective for failing to effectively cross-examine one of the police officers regarding differences between his court testimony and his police report; (2) Juan and Vincente Carillo had recanted testimony; (3) the Spanish interpreter at trial provided incompetent translation services; (4) trial counsel was ineffective for failing to obtain and present DNA evidence; (5) Petitioner should have been judged by Mexican law since Petitioner and his wife were Mexican citizens illegally residing

3

in the United States; and (6) Petitioner's arrest and prosecution violated the Vienna Convention. R&R 4-5. At the conclusion of the evidentiary hearing, the court denied Petitioner PCRA relief and permitted PCRA counsel to withdraw. R&R 5.

Petitioner appealed. On February 17, 2011, he filed a pro se Statement of Matters Complained of on Appeal. The PCRA court denied his claims and reappointed PCRA counsel for the purposes of appeal. R&R 6. On September 23, 2011, the Superior Court affirmed the PCRA court's order denying relief and allowed PCRA counsel to withdraw again. The Supreme Court then denied several Petitions for Allowance of Appeal. Id.

On July 18, 2012, Petitioner filed the Habeas Petition – written entirely in Spanish – in the United States District Court for the Middle District of Pennsylvania. The case was then transferred to the Western District of Pennsylvania, which ordered Petitioner to file an amended petition in English on October 9, 2012. Petitioner did so on October 31, 2012. On January 13, 2013, the case was transferred to this District. ECF No. 1. On February 19, 2013, the Government filed an Answer in Opposition to the Habeas Petition. ECF No. 5. Judge Sitarski entered a Report and Recommendation ("R&R") on June 19, 2014 (ECF No. 15), and Petitioner filed a timely objection

4

("Objection") (ECF No. 17). The matter is now ripe for disposition.

## II. LEGAL STANDARD

The Court may refer an application for a writ of habeas corpus to a U.S. Magistrate Judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(B). A prisoner may object to the magistrate judge's report and recommendations within fourteen days after being served with a copy thereof. See § 636(b)(1); E.D. Pa. Civ. R. 72.1(IV)(b). The Court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." § 636(b)(1). The Court does not review general objections. See Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011) ("We have provided that § 636(b)(1) requires district courts to review such objections de novo unless the objection is not timely or not specific." (internal quotation marks omitted)). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b)(1).

On habeas review, the Court must determine whether the state court's adjudication of the claims raised was (1) contrary to, or an unreasonable application of, clearly established federal law, or (2) based on an unreasonable determination of

5

the facts in light of the evidence presented. See 28 U.S.C. § 2254(d).

**III. DISCUSSION**

Judge Sitarski recommends that Petitioner's habeas claims be denied without consideration of his alleged substantive grounds for relief because his claims are barred as untimely and equitable tolling should not apply. Petitioner objects, arguing that because he does not understand English and has been denied legal assistance, he can show the "extraordinary circumstances" required for equitable tolling to apply. These arguments are analyzed below.

 A. <u>Statute of Limitations</u>

This Habeas Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which sets forth a strict one-year deadline for the filing of new petitions under 28 U.S.C. § 2254. The statute of limitations begins to run from the latest of:

 (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

 (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

6

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). There is a tolling exception: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." § 2244(d)(2).

Petitioner concedes that his Habeas Petition was untimely and that his claims are barred unless they are subject to equitable tolling (Objection 6). Therefore, the Court will adopt the portion of the R&R concerning the statute of limitations as it applies to this Habeas Petition:

> In the instant case, the applicable starting point for the statute of limitations is the "conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The Supreme Court of Pennsylvania denied allocatur for Petitioner's direct appeal on August 5, 2009. (Resp. Ex. A at 17). Petitioner then had ninety days to petition the Supreme Court of the United States for a writ of certiorari, which he did not do. See Kapral v. United States, 166 F.3d 565, 570-71 (3d Cir. 1999). Therefore, Petitioner's judgment of sentence became final on November 3, 2009, when the time for seeking certiorari expired. See id. at 575 (holding that where certiorari is not sought, judgment of sentence becomes final when

the time for seeking certiorari review expires). Consequently, Petitioner had one year from that date, or until November 3, 2010, to file his habeas petition. See 28 U.S.C. § 2244(d)(1).

However, on March 22, 2010 – 139 days into the federal statute of limitations – Petitioner filed his PCRA petition. (Pet. Ex. 36.) Because this petition was filed in accordance with Pennsylvania's procedural requirements, it is considered a properly filed application for state post-conviction relief, thereby tolling AEDPA's one year limitation period. See 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction [review] . . . is pending shall not be counted toward any period of limitation under this subsection."); see also Artuz v. Bennett, 531 U.S. 4, 8 (2000) ("an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings"). Further, such a petition is considered "pending" within the meaning of § 2244(d)(2) during the time a state prisoner is pursuing his state post-conviction remedies, including the time for seeking discretionary review of any court decisions whether or not such review was actually sought. See Swartz v. Meyers, 204 F.3d 417, 424 (3d Cir. 2000). However, the time during which a state prisoner may petition for a writ of certiorari from the denial of a state collateral petition in the Supreme Court of the United States does not toll the AEDPA's statutory period. Stokes v. Dist. Attorney of Phila., 247 F.3d 539, 542 (3d Cir. 2001).

In Petitioner's case, the Superior Court denied Petitioner's PCRA petition on September 23, 2011. Commonwealth v. Almazan, No. 78 EDA 2011 (Bucks Ct. Cm. Pl., Sept. 23, 2011)). Thus, the AEDPA's statute of limitations began to run again on October 24, 2011 – the expiration of the time for seeking review of the decision to the Pennsylvania Supreme Court. See Jenkins v. Superintendent of Laurel Highlands, 705 F.3d 80, 85 n.4 (3d Cir. 2013) ("A PCRA petition remains pending "during the time a prisoner has to seek review of the Pennsylvania Superior Court's decision [by filing a petition for allowance of appeal to the Pennsylvania Supreme Court] whether or not review is actually sought.") (citation omitted). At this point, Petitioner

8

>    had 226 days remaining, or until June 6, 2012, to file a timely § 2254 petition.
>
>    Petitioner failed to meet this deadline, as he filed the instant petition on July 18, 2012, over a month after the expiration of the AEDPA's statutory period. Consequently, Petitioner is barred from presenting his claims, unless the instant petition is subject to equitable tolling.

R&R 9-12 (footnote omitted).

B.  Equitable Tolling

AEDPA's one-year statute of limitations period is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010); see also Alicia v. Karestas, No. 07-03183, 2008 WL 4108056, at *3 (E.D. Pa. Aug. 28, 2008) (Robreno, J.) (citing Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 618 (3d Cir. 1998)). A petitioner qualifies for equitable tolling only if he is able to show: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland, 560 U.S. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).

The Third Circuit has recognized that equitable tolling may toll the one-year statute of limitations under the following three circumstances: "(1) if the defendant has actively misled the plaintiff; (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights; or (3) if the plaintiff has timely asserted his rights, but has

9

mistakenly done so in the wrong forum." Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999) (internal quotation marks omitted).

### 1. Extraordinary Circumstances

Petitioner alleges that given his circumstances, his inability to understand English triggers equitable tolling under Pabon v. Mahanoy, 654 F.3d 385 (3d Cir. 2011). In Pabon, the Third Circuit held that the "inability to read or understand English, combined with denial of access to translation or legal assistance, can constitute extraordinary circumstances that trigger equitable tolling." Id. at 400. The relevant inquiry under Pabon "is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." Id. at 401.

Petitioner alleges sufficient facts to demonstrate that he was entitled to assistance due to his difficulties with the English language: throughout his state court proceedings, Petitioner required the services of an interpreter, and he has made numerous filings in Spanish throughout all his post-conviction proceedings, consistently noting that he does not speak English.

Whether Petitioner received the translation or legal assistance to which he was entitled is less clear. In his

Objection to the R&R, Petitioner alleges that "no materials or computer" were available in the Spanish language, and that he was given a § 2254 form in English, not Spanish. Objection 3, 6. However, the prison law library did provide Petitioner with an interpreter named Marcos, who assisted Petitioner with language translation throughout his direct appeal. Marcos also typed Petitioner's documents for him. Id. at 4. Petitioner does not allege that Marcos's assistance (or the assistance of a replacement) ever ceased to be available to him, including when it came time to file his Habeas Petition. But he does allege that he was denied legal assistance after the conclusion of his direct appeal. Id. at 6. It is somewhat unclear, therefore, whether Petitioner did have translation or legal assistance available to him throughout the duration of the time during which he could have filed a timely habeas petition.

Petitioner's allegations therefore fall somewhere between the allegations of the petitioner in Pabon, who affirmatively stated that he was "repeatedly denied legal materials in Spanish or translation assistance," 654 F.3d at 401, and many petitioners who have failed to allege such facts. As Judge Sitarski notes, "[c]ourts in this District have found that Pabon does not apply when the Petitioner fails to explain the efforts he made to get AEDPA materials in his native language and does not indicate how prison officials denied him

11

access to such materials." R&R 13-14.[1]

Here, Petitioner's access to assistance from Marcos distinguishes his allegations from those of the petitioner in Pabon. In Pabon, the petitioner received an evidentiary hearing because there was substantial evidence in the record showing that he "consistently claimed to be a non-English speaker, required a translator in his interactions with the police and the court system, lacked access to legal materials or notice of AEDPA in Spanish in the [restricted housing unit] where he was housed for five years, and was repeatedly denied legal materials

---

[1] See, e.g., Cruz-Ventura v. United States, No. 13-7230, 2014 WL 5023441, at *2 (E.D. Pa. Oct. 7, 2014) (denying habeas relief where was "no indication that [Petitioner] lacked access to materials in Spanish or that he was denied language assistance," and he "successfully met previous deadlines for direct appeals and for a PCRA petition"); Santana v. Thomas, No. 13-5407, 2014 WL 2696502, at *5 (E.D. Pa. June 13, 2014) (denying habeas relief where petitioner did not "discuss any efforts he made to request AEDPA information or research materials written in Spanish" and did not indicate how prison officials or anyone else "thwarted his efforts to timely file" his habeas petition); Mohammed v. Gavin, No. 13-2669, 2013 WL 6485904, at *5 (E.D. Pa. Dec. 10, 2013) (denying habeas relief where the state court record did not indicate that "[p]etitioner ever required or even requested the aid of an interpreter or translator during his interactions with the police or the state courts," and pdid not "discuss any efforts he made to request AEDPA information or research materials written in his native language"); Cruz-Hernandez v. Thomas, No. 11-2978, 2012 WL 2889664, at *7 (E.D. Pa. July 11, 2012) (denying habeas relief where petitioner did not allege "that he requested and was denied access to translation or legal assistance" or that "his prison does not provide Spanish materials," and his "ability to write letters and file legal documents, even if by proxy, in English, foreclose[d] the argument that the language barrier, in isolation, prevented his filing in a timely manner").

in Spanish or translation assistance." 654 F.3d at 401. Here, in contrast, Petitioner's claims that he was denied access to legal materials in Spanish, together with a lack of clarity around the duration of Marcos's translation assistance, merely establish that Petitioner has alleged <u>some</u> denial of assistance. An evidentiary hearing could be appropriate in order to determine whether Petitioner truly was denied the assistance to which he was entitled, rising to the level of "extraordinary circumstances."

### 2. <u>Reasonable Diligence</u>

However, because an equitable tolling inquiry has two prongs – extraordinary circumstances and reasonable diligence – and both must be satisfied, even if Petitioner has alleged enough to warrant an evidentiary hearing on the extraordinary circumstances prong, he must also show that he was reasonably diligent in bringing his claims. Without such a showing, he would be unable to prove equitable tolling, and therefore an evidentiary hearing on the other prong would ultimately be fruitless.

Judge Sitarski concluded – without objection from Petitioner – that Petitioner was not reasonably diligent in pursuing his rights:

>   Petitioner's PCRA appeal was denied by the Superior Court on September 23, 2011. On []December 23, 2011, Petitioner filed a "Petition for Allowance of Appeal nunc pro tunc," in which he recognized that he had failed to file a timely petition, and explained the reasons for said failure. (Resp. Ex. I.) Clearly, Petitioner was aware at that time that there were issues surrounding the timeliness of his state appeal to the Pennsylvania Supreme Court. While this Court recognizes that Petitioner was attempting to regain his ability to petition for allowance of appeal, the Supreme Court has made clear that a habeas petitioner who is reasonably confused about whether a state filing will be timely should file a protective habeas petition in federal court and ask the court to stay and [hold in abeyance] the federal habeas proceedings until state proceedings are exhausted. See Heleva v. Brooks, 581 F.3d 187, 190-92 (3d Cir. 2009).
>
>   Given that Petitioner decided to wait almost seven months to file the instant petition after he demonstrated his awareness of the timeliness issues surrounding his state proceedings, this Court cannot conclude that he pursued his federal rights diligently. See Ortega v. Vaughn, No. 03-3693, 2004 U.S. Dist. LEXIS 32029, at *14 (E.D. Pa. July 2, 2004) (decision to file a second untimely PCRA instead of a timely federal habeas petition did not constitute reasonable diligence).

R&R 16. This Court agrees, and adds that Petitioner has failed to allege facts that would demonstrate reasonable diligence.

In Pabon, for example, the Third Circuit found that the petitioner had been reasonably diligent because he had submitted at least ten separate instances, both before and after his AEDPA deadline, where he sought assistance: he wrote several letters to his PCRA attorney, submitted numerous requests for materials or assistance within the prison system, requested assistance from the law library paralegal on several occasions,

14

filed an "Official Inmate Grievance" detailing his challenges with English and requesting assistance, sought help from another attorney, and requested an Inmate Legal Reference Aide. 654 F.3d at 402.

In contrast, Petitioner's own Objection suggests that he was insufficiently diligent in pursuing his claims – and, moreover, that when he made requests for assistance, they were granted, at least to some extent. He says that between February and March of 2007, he "was seeking help" from the institutional law library. Objection 3. And though he was not given a legal aide or paralegal, as he wanted, he was given a translator named Marcos, who helped him throughout his state court proceedings. Id. at 4. Petitioner seems to believe, though, that because he was eligible for the prison's "Rule 007" legal assistance - which is available to uneducated inmates or inmates with language difficulties - and got translation assistance alone, he was denied assistance to which he was entitled. But he does not allege that he applied for such assistance and it was denied. In fact, he did apply for Rule 007 assistance in May 2014 – well after he filed the Habeas Petition - and that request was granted. ECF No. 13. He does not explain what prevented him from making such a request sooner.

Furthermore, though Petitioner explains in detail the assistance that he got from several inmates while appealing in

15

state courts, his narrative essentially stops at the end of his state court proceedings. At that time, Petitioner says, the inmate who assisted him with portions of his appeal notified him that the inmate would need more money to file Petitioner's Habeas Petition. Petitioner elected to "seek help elsewhere," but does not say if or how he did so – only that he filed a notice of appeal in federal court, with the help of an unnamed inmate, and that he eventually filed his Habeas Petition. Id. at 6. He does not say whether he sought help for that filing, or whether he made any additional requests to the prison during this time. Clearly, whether or not Petitioner was aware of his AEDPA deadline, he knew that he needed to file a habeas petition, and he has not shown that he was reasonably diligent in doing so.

Therefore, because Petitioner has not shown enough to satisfy the reasonable diligence prong of the equitable tolling test, his claims are not subject to equitable tolling.

## IV.   CERTIFICATE OF APPEALABILITY

A petitioner seeking a certificate of appealability must demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his

constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). The Court will not issue a certificate of appealability because Petitioner has not made a substantial showing of the denial of his constitutional rights. See Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

**V.   CONCLUSION**

For the foregoing reasons, the Court finds that although Petitioner's allegations may rise to the level of extraordinary circumstances, he was not reasonably diligent in bringing his claims. Therefore, his Habeas Petition is not subject to equitable tolling and is barred as untimely. No evidentiary hearing is warranted, and the Court will not issue a certificate of appealability. An appropriate order follows.